## Patton v. Patton, Appellant.

Argued November 13, 1929.

Before
PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Roy Pressman,* for appellant.

*Gordon Butterworth,* for appellee.

OPINION BY GAWTHROP, J., January 29, 1930:

This is an appeal by a wife from a decree of divorce granted to her husband on the ground that she wilfully and maliciously deserted him. The parties were married November 8, 1899, and lived together with her parents in Philadelphia until February 27, 1914, the date of the alleged desertion. They have one child, a son now twenty-two years of age. This action was brought in 1927. Libellant is a printer by trade. His testimony was to this effect: "Things went along very well" for about three years, when he lost his job and had no money to get along on. He went into business

for himself shortly thereafter, but was obliged to sell out because of poor health. In 1913, he had a position with the Hunt Pen Company in Camden, New Jersey. One day when he went home from work he found his wife's sister and her mother standing on the porch of the house at 5630 Arch Street, Philadelphia. They told him that his wife's father had rented a house at 26 North St. Bernard Street. He testified: "Of course, there was nothing left for me to do then and I went home to my people ...... and my people advised me to go back and see if things could not be rectified, which I tried to do, but I could not patch things up ...... I wanted to take a house over in Jersey, where we could live, ...... but my wife refused to go with me, saying she would not go as long as her people lived here. Then I went back again and tried to amend things and get along on account of the boy's sake, and in the meantime I got out of employment. I was hunting work after I got out of employment, and one day I had been hunting work and I was pretty tired that night when I got home and I was sitting down on the rocking chair when her father took me by the shoulder, took me to the door, and told me to get out ...... That was February 27, 1914." This was at 26 North St. Bernard Street. He testified that the respondent was present at the time, but did not say anything. He testified further that in the following April he went to his wife and offered her support for the boy, but she refused to accept it; that in December of the same year he "went over and tried to make amends again, see if we could not get together, and she jumped up and said that she was not going to live with me any more and if I did not get away she was going to call a cop; that "she would not live with me as long as her people lived;" that on several occasions he offered her a home if she would live with him and that he was able to support her; that she

never gave him any reason for refusing to live with him, but that she accused him of drinking too much. On cross-examination he was asked: "After, as you say, you were directed to leave the St. Bernard Street house did you ever offer your wife a home?" A. "No, sir." Q. "You never offered her a home after you left the St. Bernard Street house?" A. "No, sir."

The respondent testified that her father, who was seventy-three years of age, did not order him to leave the house or eject him from it; that her father and her husband were on friendly terms; that her husband had not supported her properly; had not been steadily employed and often drank to excess, particularly over week-ends; that on February 27, 1914, he came home and went upstairs and started to pack his clothes; that she went up after him and asked him what he was doing, and he said he was leaving this time for good; that he came downstairs with two bundles of his clothes under his arms and left voluntarily. When she was asked whether he assigned any reason for leaving, or found fault in the way she was conducting the house, she said that they "just had a little squabble about his drinking, staying out so much, not supporting us properly;" that since February 27, 1914, she received no word or communication whatsoever from him and had not seen him, except on one occasion when she went to his home for the purpose of obtaining some money belonging to the boy; and that she never told him that the reason she did not live with him was that she preferred to live with her parents. She testified further that she was willing to leave the home of her parents and live with her husband if he provided a home, and that the only reason they lived with her parents was he could not, or was not, earning enough money to support her and the boy; that he gave her money when he was regularly employed. Her sister and her son corroborated her testimony as to the circumstances of

her husband's leaving the house on the day he alleges she deserted him.

We have been unable to agree with the master and the court below that this evidence clearly and satisfactorily establishes that there was a desertion by the wife. The weight of the testimony as to the circumstances in which he left their home is with the respondent. The effect of his uncorroborated testimony on the question whether he ever offered her a home elsewhere is so shaken by her testimony that, in the absence of circumstances warranting a disregard of the latter, it cannot be said to measure up to the standard required in a divorce proceeding. It is due the husband that we should state that in our opinion the weight of the evidence on the question of his insobriety is in his favor. But the wife did not undertake to justify her refusal to leave the home of her parents on that ground. She attempted to justify her remaining with her parents on the ground that he offered her no other home. We are of one mind that the libellant's evidence wholly fails to meet the burden of proof which rests on one who seeks to dissolve the marriage bond.

The decree is reversed and the libel is dismissed at the cost of the libellant.